Nicole Nicolette Mace, Appellant Cross Appellee, Sgt. Philip Antico Mr. Antico raises three issues today and they're all interrelated so I'd like to touch on all three briefly. The first issue is regarding the sufficiency of the evidence and in this case, the evidence that was lacking in this case is his knowing intent to mislead the FBI. If you look at the testimony of Officer Gigilio as well as Officer Lopez and Officer Harris, they all were talking about how it's important that a sergeant's job is to make sure that these It's also important to tell investigators the truth. Yes, your honor. And when he went to the interview on February 19th, 2015, it was six months after the incident. He remembered lots of other details, right? I mean, that's the difficulty that I'm having here is a juxtaposition between, you know, him recalling very specific details about the chase, who, you know, sort of was out of the car first, who engaged whom first, and then with all of the questions about the report, I don't know, maybe the memory is vague. Well, he did say he did offer to go back and check and he also did not review the file before he sat down with the FBI. And if you look at the Officer Lopez testimony, and he was the one who specifically rejected Officer Brown's report, he said that oftentimes the police officers will come into his office, say, please reject my report with no explanation at all. They reject the report and don't think twice about it. Yeah, but it's just super curious how these revisions occur occurred and how they appear to be done in a way to conform better to what was on the video. But there was no evidence about the context of how these reports were rejected, why the reports were rejected, if the officers approached Mr. Antico or how any of that was done. But I guess the difficulty that you have, right, on appealing a jury verdict against you in a criminal case is that, for me, the juxtaposition of detail with lack of recall for Judge Pryor, the chronology vis-à-vis the video, isn't it more than rational for a jury to conclude that it was intent to mislead? Well, and that leads me to my next point, and that was the problem with this case. Because of the lack of evidence, when the case got to the jury, they couldn't reach a decision, and they said that they had reached a decision on the first two notes, I mean on the first two counts, and then on the third they couldn't agree. So you're right, Your Honor, she read the pattern instruction, and I know that you're well familiar with the case law on this case. They said there was no amount of time talking, contemplation, discussion of the facts that was going to lead to a unanimous verdict. Then after the Allen charge was read, referencing the trial has been expensive in time, effort, and money, another trial will increase the cost of both sides, the jury said, well, Your Honor, your comments are material. As a result, we have a jury, we reached a verdict. And I thought that that is, I mean, that's a curious thing for a jury to send out a note to say that the Allen charge was material to their decision, basically saying... I mean, we have just a huge body of case law that says we expect that jurors will follow the court's instructions, so would it be surprising that when they're given the pattern Allen charge that they took it to heart? No, but that's not surprising, but what happened after the verdict is surprising. And at first, first of all, this is the only circuit... Now we've moved on to juror misconduct. Yes, and as you're aware, this is the only circuit that referenced the cost of a retrial, and I'm aware that the only way for that to change is en banc. I think this would be the perfect case for en banc review. We have very little evidence against my clients. Then we have the juror that was deadlocked, deadlocked. And then at the end of the trial, after the jury gave their verdict, they were told that they were allowed to speak to the jurors. I mean, they were allowed to speak to the lawyers in the case if they wanted to, and that's on volume five, page nine. They said it was up to them. They could either preserve their privacy and not talk to the lawyers or come forward and talk to the lawyers. It was up to them. And in this case, they did. One juror specifically came forward. She said that she had attempted to contact the district court, but wasn't able to do so. She was searching for legal advice because she felt that... Because she was explaining in her email that was filed with the court that she was bullied, that they didn't base their verdict on the evidence that was presented, that they just basically said, well, someone should be held accountable for what they saw in the video. And that led to the... It was a question about whether or not they were aware that the two other officers in the other case that we were here on yesterday were acquitted. And the problem with that is... You had a very clear rule, though, about impeaching a jury's verdict. Right. But taken together with the Allen charge, and we're looking at... We're examining the totality of the circumstances in this case. I think that that's very, very relevant. And what happened here, and this is where I think the court abused her discretion in this particular issue, is defense counsel... And bear with me with the timeline. I think it's important to show exactly how this occurred. Defense counsel requested on January 22nd that... To just have an interview. He wasn't moving for a new trial saying, you know, this is egregious, the verdict needs to be set aside. He just wanted to know... She wanted to come forward. She wanted to say what happened. And the judge completely shut her down and wouldn't let her come forward. And at the same time, on January 26th, before she had rendered that ruling, another juror had contacted the government about their opinions and everything that happened in deliberations, and they wanted to come forward. So the government filed a motion regarding juror contact, basically saying, no one should be able to talk to juror number one, no one should be able to talk to any jury in this case. But that's a direct contradiction to what the judge had said after the trial. She said, if you want to talk to these... If you want to talk to the lawyers in the case, you can talk to them. This wasn't a situation where defense counsel called all these jurors after the case. They... She came to him. She wanted to talk to the jurors. She completely just shut her down and prevented her. I mean, even a five-minute meeting with the attorneys and her, or just the district court and the juror, would have foreclosed this issue, or it would have uncovered whether or not they actually were aware that those two other officers were acquitted in this case, and they held Sergeant Antico, and they held... They rendered a guilty verdict because of that extraneous information. And because she didn't hold this interview, it completely... We just will never know. And then with the second juror is even more concerning because she, or he or she, we don't know who it is. They came forward on January 26th, and the government was aware. The court issued their order on January 30th, saying that no one could communicate with juror number one. On February 1st, she denied juror number one's interview. Then after both of these orders came out, then the government decided to disclose to defense counsel that a second juror had come forward. But they said, yes, a second juror has come forward in this case, but we're not going to tell you what they said because it's barred by 606B. And the real problem is that the trial court is the gatekeeper in this case. And while the government can say, oh, it was barred under 606B, the bottom line is they had the information and the defense didn't. And in this case, when we have a defendant whose liberty is at stake to not even disclose the content of that information, even informally, is just... And it really does inviolate the Sixth Amendment rights to an impartial jury. Because now we don't know what that second juror said. I mean, what if that second juror said, I heard that Allen charge about the cost of the trial, so I completely disregarded the evidence in this case. I already pay enough money in taxes. I didn't want to watch this case be re-prosecuted, so I just went along with the majority. While that might not fit under 606B, it certainly would be relevant to show that the Allen charge was coercive in this case. And now, by letting the government be the gatekeeper, I think it is an abusive discretion in this case. So when you look at the cumulative errors in it, I think that you'll see that it really does... The Sixth Amendment here should have trumped 606B in this case to at least find out what these jurors wanted to tell the court. And I will wait to hear what they're going to argue with the sentencing issue and reserve that for rebuttal, unless you guys have any more questions. That's fine. We'll add two minutes to your time, and we appreciate it, Ms. Mace. Thank you, Your Honor. Mr. Wang. Two minutes to your rebuttal time. We'll make it five. Mr. Wang. May it please the Court, Christopher Wang on behalf of the United States. With regard to sufficiency, the evidence was more than sufficient to establish that Antico obstructed justice in violation of Section 1512B3. In his interview with the FBI investigators, he falsely vouched for the credibility of his subordinate officers, omitted that the officers' initial reports did not fully reflect their use of force, and omitted that he returned several reports for corrections in a short period of time after watching the video. The jury could conclude that these false statements and omissions were misleading conduct. Because these misstatements and omissions occurred despite Antico's detailed recollection of numerous other details of the incident, including details that did not directly involve him, the jury could also conclude that Antico demonstrated an intent to hinder the FBI's investigation of the officers' assault of the that Antico intentionally chose not to reveal this information. It could also conclude that his vouching for the credibility of the officers, his offer to the FBI to see if he rejected any officer reports, and his qualification of answers with I don't know was intentionally misleading. Now with regard to the Allen charge, the District Court did not err, much less plainly err, in giving the Allen charge to a jury that twice indicated it was deadlocked, and after the court told the jury to retire in the evening and return in the morning to continue deliberations. The Allen charge was adopted from this circuit's 2016 pattern jury instructions. This court has repeatedly approved use of an earlier version of the charge that placed more emphasis on the cost of retrial, and thus the Allen charge language was not coercive. I think it's important for the court to know that the reference to the cost of retrial occurs at the very beginning of the Allen charge. When you look at the transcript, in fact, it was taken actually verbatim from the 2010 instruction, not from the 2016 instruction. Your Honor, there was an error by the transcriber of the court transcript. In fact, it was from the 2016. You're saying the transcript is inaccurate? The original transcript was inaccurate. The original transcript, I believe, said something to the effect that obviously another retrial would only serve to increase costs, and we brought this issue up with the transcriber of the transcript, and she filed an additional volume. I think it's, I believe it's 374, in which the words obviously and would only were deleted. In fact, the court gave the Allen charge that was directly from the 2016 instruction, in which it says another trial will increase the cost to both sides. So it eliminated the obviously. I think it was the beginning part of the instruction that made me think that it was taken verbatim from the 2010, but we'll take a look at the record. Yes. In any event, this court has repeatedly approved the 2010 charge that included the obviously, and if there's any change to be made, I believe that the best change would be to change the circuit pattern instruction to eliminate the reference to cost, if that's what this court decides to do. I mean, so I have it on page, so many doggone record references on these pages, it's hard to know which one I should be using. Your Honor, I believe it's volume 374 at pages 4 through 5. Yeah, so if you look at page 4 of 15, does that make sense? Is that what we're looking at? At the top of the, it says document 342? That was the originally filed document that has the incorrect transcription of the Allen charge that the district court gave to the jury. Okay. The corrected one does not include the word obviously. Okay. And would only, it says another trial will increase the cost of both sides. Okay, we'll look at that. Okay. I disagree with opposing counsel's contention that this case would be a good case to take on bond to reconsider the propriety of the Allen charge. I think this case would be... I'm confident that that's not something for our panel. Okay. Thank you. Thank you, Your Honor. You know, if the court has any additional questions about the Allen charge, I'd be happy to answer them right now or else I'll just move on to the allegations of jury misconduct. The district court had acted well within its discretion in denying Antico's request that the court investigate post-verdict allegations of jury misconduct under Rule 606B. The first jurors email allegation that some jurors harbored a bias against police officers, bullied other jurors into reaching a verdict, and that one juror said her opinion should be dismissed because she had a quote-unquote crush on Antico, all concern internal matters on which a juror may not testify under Rule 606B. The first juror's allegations that several jurors voted guilty because they wanted to hold someone responsible for the forced witness on the video is insufficiently specific to trigger the court's duty to investigate because it did not mention media reports or other extraneous evidence. I disagree with opposing counsel's contention that the acquittal of the two other officers is the only or necessarily the most logical reading of what this juror allegedly said. Because Antico's trial was severed from the other two trials, from the trial of Harris, Ryan, and Brown, the jurors may have believed that Antico was the only person who was being put on trial out of this incident. In fact, needing to hold someone responsible for what was witnessed on video doesn't really even make much sense on its face because Officer Brown was convicted of using excessive force in violation of Section 242 coming out of this incident. With regard to the second juror's with AUSA McMichael's wife, this conversation also implicated the jury's deliberations. Why should the issue of the second juror, why should that have not gone to the court? Why isn't the court entitled to know about the substance of that conversation? I think the court exercised its discretion and decided that, first of all, AUSA McMichael represented to Antico's counsel that the conversation concerned jury deliberations. It did not fall under one of the exceptions to Rule 606B. And had she called AUSA McMichael into chambers, that's what he would have said. He would have said that this concerns jury deliberations and does not fall into one of the exceptions to 606B. I'm looking at the text. So it's just a trust us? Well, AUSA McMichael is an officer of the court. I think the court exercised its discretion, deciding that his word was trustworthy. And I'm looking at the text of Rule 606B, and it says a juror may not testify basically as to the substance of jury deliberations. And it seems to me that it follows that if the juror cannot testify as to the substance of jury deliberations, an AUSA can also not relate a conversation that that juror had with his wife regarding jury deliberations. You're saying that the AUSA cannot tell the court about that conversation? Cannot testify as to the court. Well, but we're talking about a little bit prior to that. We're talking about the court and serving as a gatekeeper. Is that court not entitled to know about the substance of that conversation? And if not, how do we have any sort of meaningful review of that? Well, the text of the rule, I think, can be interpreted in a way that the court, because he's not allowed to, AUSA McMichael would not be allowed to testify as to the substance of the conversation. And perhaps that he should not be allowed to tell the court either. But in any event, even if the court, even... What is our standard of review for this? This is for an abuse of discretion. What if we said that the showing would be for a defendant to prompt a trial court to conduct an investigation? I believe that the standard is from Covell. It's clear, substantial, incontrovertible evidence that a specific non-speculative impropriety has occurred. He, the defendant... How exactly would the defendant in this case have any basis to make that argument when the only evidence is the AUSA's representation that don't worry, nothing improper happened? How in the world would the defendant make the case? Well, that's sort of an issue, Your Honor. But I do think that the district court in this particular case exercised her discretion in determining that. There was not even any kind of allegation, not even... How could you make an allegation consistent with Rule 11 or whatever the criminal analog is without having any basis for knowing what the substance of the conversation was? Yeah, I agree with you, Your Honor. That would be difficult. But I think under the abuse of discretion standard that the district court acted well within her discretion in relying on the representation of the AUSA who's an officer of the court and represented that this conversation did not fall within any of the exceptions to Rule 606B. Are there other cases, maybe there are lots of them, in which district courts have said, we'll just take the word of the party representing to us that nothing untoward happened? I'm not aware of any cases, Your Honor. I don't know how often this issue arises. Are there any cases that say the trial courts obliged to investigate? There are no cases that say the trial courts obliged to investigate. The cases are very clear that the investigation is within the district court's discretion to conduct or not conduct. So the U.S. Attorney's Office comes forward and says, this contact happened. This was the substance of it, which gives the trial court the opportunity to decide whether to do something further, and the trial court decides not to do something further. And so, COBOL really provides the standard for how we evaluate that. That's correct, Your Honor. And I believe that's a very high standard to meet, and it wasn't met in this case. So I think it is a high standard, but I'm curious just as to your reaction to this line, the two sentences, I guess, in the district court's order rejecting this claim. Antico's motion failed to present any evidence that impropriety occurred. The motion simply states that a juror spoke with the wife of an AUSA about his or her experience as a juror. How could the defendant have possibly said anything more? I don't think the defendant could have possibly have said anything more, but I think the issue is whether the district court looking at this, at the representation of AUSA McMichael, acted within her discretion in determining that there was any, that the high standard for showing impropriety to warrant further investigation, set forth in COBOL, was met. And it wasn't met here. Your Honors, if there are no additional questions on the appeal, I'd like to turn to our cross appeal. Is it clear that, before we do, is it clear that the United States was obliged to bring that to the attention of the court? I don't think, I'm not aware of any case or rule that requires the United States to do so. Just did it out of abundance of caution? They did out of, I think, a sense of ethics and professional responsibility, respect for the defense counsel. With regard to the cross appeal, I thought a lot about the cross appeal, and I think that my answers to some of the panel's concerns were not as clear as they could have been yesterday, so I'd like to clarify, if I might. The taser, the use of the taser as a dangerous weapon requires at least three preconditions. First, there has to be a conviction for an assault, or an assault-like offense, such as use of excessive force that involves a taser. Second, the use of the taser must be intentional. It can't be accidental or by mistake. Third, the use of the taser must be without legal justification, and I think these three preconditions will cabin the use of Section 282. Let me ask you a question about it, okay? Excuse me? You can have this conviction, right? Yes. Without any proof necessarily that, without the jury necessarily inferring that the use of the taser was the basis for the conviction. You have this chase, and the officer goes in and immediately starts beating the victim. If the taser is used later in the episode, in the incident, could it be that, although there was a violation of the victim's civil rights and evidence that would support the conviction, there might not necessarily be kind of a separate view about what happened when the taser was used? I think that's possible, Your Honor, but I think in this particular case, there's no real dispute about Brown's use of hard force vis-a-vis JB. Yeah, that may be, but my point is, you seem to have been advocating for almost a per se rule that whenever a taser is used, then this enhancement is going to apply, and it just, it's still, I'm not satisfied with that. That just doesn't seem right to me, and it seems like it has to be left to the fact finder. He, I think that the three preconditions that we set forth are going to limit the use of the taser to circumstances in which the conduct warrants it. I know, I like- It looks like we have to kind of look at the record and tell the district court, this is what we see it, see happened, and therefore, this is what you must infer from it. That just seems like invading the province of the fact finder. Well, I think a taser is qualitatively different from other possible dangerous weapons. I don't, to my knowledge- How the incident unfolds also matters, as you just acknowledged. But there's no dispute here that Brown used the taser on JB while JB was passively resisting arrest. But the biggest problem is, is we don't really know what the district court meant when the you know, the dispute we had the other day about whether this was a binary kind of inquiry in the district court's mind. Oh, it's either inflicting, intentionally inflicting bodily injury or it's trying to gain control, and it could be both. And what we probably need to do is get a more complete explanation from the district court. Yes, your honor. I see my time is up. You can certainly finish if you have anything in response to that. I don't have any other further comments. If the panel has any additional questions. Okay. Thank you, Mr. Wayne. Ms. Mace. May I please record? Briefly, your honors. I just wanted to go back to the misconduct issue. I did an extensive search. I've not found any cases where the government said another juror contacted us and refused to disclose the information that was provided to them. And I looked up the historical and legislative reasoning behind Rule 606B, and it's talking about protecting the jurors' rights. So the government did really everything that it should have done. It brought it to the attention of the court. I mean, there's no case law about it. And, you know, one thing they could have done is just not do anything. But they didn't do that. Out of fairness to you, your client, and the court, they brought it to the attention of the court. So the government didn't do anything wrong, right? Your complaints with how the trial court handled this, I thought. I respectfully disagree to some degree because they got this information on January 26th. If you look at their motion that they filed regarding this issue, they got it on January 26th before the court made her first ruling about the first juror that came forward. So if the district court was aware that another juror was out there making other issues about this verdict... When they bring it to the attention of the district court, the district court does know about the earlier juror. Right, well, she knew about it, but she didn't know about it at the time that she ruled that the defense didn't have enough evidence. I don't see how that could possibly make a difference because by the time they do bring this to the attention of her, she knows about both. But she'd already made her ruling about the first juror. But she could revisit it. Well, she could have revisited it, but I think it was because the sentencing was set for the very next day, and also... That's a lot of speculation. I mean, but the point is, I don't see how the timing really has anything to do with it. I would have thought your response to Judge Pryor's question about whether the government did anything wrong would have been... I'm not trying to hold the government in error here. I'm trying to hold the trial court in error. Well, and I am trying to hold the trial court in error here because they let the government be the gatekeeper. But when you were asking the government earlier, why did they even come forward? That's my concern. If it was really so irrelevant and completely barred under 606B, why even tell defense counsel about it, but then say in the same breath, we're not going to tell you what that juror said? And then the district court just agrees and says, we're not going to even visit this issue. And I just wanted to bring those two... But how do you overcome abusive discretion? I think that when you look at the court and you take into consideration the Allen charge, the lack of evidence in this case, and then letting the government serve as gatekeeper, I think that's where she abused her discretion. I think if she had just brought... Even just bringing AUSA McMichael, and that's why I don't think it violates either the local rule regarding juror contact or the rule 606B. They could have talked to the government about what they said. And maybe they didn't even get to the point of bringing into the juror, depending on what the content of that information was. So I think for the government to say, oh, we were just following 606B, it's just not... If you look at the intent behind that rule, that's not what it says. It's to protect the jurors, not to prevent the government from presenting information on what they said. And that's where I think she abused her discretion in that issue. Are there any more questions? If I could just touch on the sentencing issue. Antigua was charged separate... He was charged in the same indictment, but he was completely separate conduct from Officer Brown. So before we even get to the issue of assault, aggravated assault, I think first we have to look at his sentencing, his record, the judge's orders in this case. And she did not apply... The government wanted them to apply the deprivation of rights under color of law. She did not apply that to Mr. Antigua. She just applied the obstruction of justice, because that's the only thing he was convicted of. And if you look at the indictment in his case, it was about that conversation he had with the FBI on February 15th of 2015. And he did not reject Officer Brown's report. That was another officer. So to have him accountable for what Officer Brown did, I think the court would have to first get to that before we even get to the aggravated assault. And I would argue that it's just not there when you look at the indictment and you look at the sentencing and how the judge made her ruling. And if you look at the order that she filed in Antigua's case, she didn't apply it. And then she found that the government did not prove it by preponderance of the evidence. I think when you review her order, she didn't say that they were usually exclusive, the injury versus gain and compliant. She found the video was grainy. She couldn't tell when the tasers were being fired. And I see my time is up. May I finish? 15 seconds. Okay. And I was just going to argue that it's one, it's not preserved. And it's a slippery slope argument like we were talking about or you were talking about yesterday. And that is inapplicable to Antigua and it shouldn't be. Thank you, Ms. Mace. We have your case. I will move to the next.